**ZOLDAN LAW GROUP, PLLC**
Michael Zoldan, AZ Bar No. 028128
Jason Barrat, AZ Bar No. 029086
14500 N. Northsight Blvd., Suite 133
Scottsdale, Arizona 85260
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
jbarrat@zoldangroup.com

**BENDAU & BENDAU PLLC**
Clifford P. Bendau, II (030204)
Christopher J. Bendau (032981)
P.O. Box 97066
Phoenix, Arizona 85060
Telephone: (480) 382-5176
Fax: (480) 304-3805
Email: cliffordbendau@bendaulaw.com
         chris@bendaulaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Ariel Nixon** and **Selena Coll**, Individually, and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| vs. | |
| **Dream Street, Inc. d/b/a Curves Cabaret**, an Arizona Limited Liability Company, **William V. Zanzucchi and Jane Doe Zanzucchi**, a married couple, **Timothy E. Zanzucchi and Jane Doe Zanzucchi II**, a married couple, and **Michael Pavon and Jane Doe Pavon**, a married couple, | |
| Defendants. | |

Plaintiffs, Ariel Nixon ("Plaintiff Nixon" or "Ariel Nixon") and Selena Coll ("Plaintiff Coll" or "Selena Coll") (collectively, "Plaintiffs"), individually, and on behalf of all other persons similarly situated, alleges as follows:

## PRELIMINARY STATEMENT

1. Dream Street, Inc. d/b/a Curves Cabaret ("Curves Cabaret"), William V. Zanzucchi and Jane Doe Zanzucchi, Timothy E. Zanzucchi and Jane Doe Zanzucchi, and Michael Pavon and Jane Doe Pavon (collectively "Defendants") required and/or permitted Plaintiff Coll to work as an Exotic Dancer at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate her at the applicable minimum wage and overtime rates. Defendants misclassified Plaintiff Coll as an independent contractor when she was in reality an employee of Defendants. In fact, Defendants refused to compensate Plaintiff Coll whatsoever for any hours worked. Plaintiff Coll's only compensation was in the form of tips from club patrons. Moreover, Plaintiff Coll was required to divide her tips with Defendants and other employees who do not customarily and regularly receive tips. Therefore, Defendants have failed to compensate Plaintiff Coll at the federally-mandated minimum wage and overtime rates.

2. Plaintiff Nixon worked as both an Exotic Dancer and Cocktail Server during her employment with Defendants. Defendants required and/or permitted Plaintiff Nixon to work as both an Exotic Dancer, Cocktail Waitress, and Drink Serving Dancer at their adult entertainment club in excess of forty (40) hours per week, but refused to compensate her at the applicable minimum wage and overtime rates. For most shifts that Plaintiff Nixon worked, she worked as an Exotic Dancer at least part of the shift. For shifts during

which Plaintiff Nixon started out as an Exotic Dancer, she was classified as an independent contractor for the entire shift.  For shifts during which Plaintiff Nixon started out as a Cocktail Waitress or Drink Serving Dancer, Defendants classified her as an employee until she began performing work as an Exotic Dancer, at which point Defendants reclassified her as an independent contractor as for the remainder of that shift–even if she returned to working as a Cocktail Waitress or Drink Serving Dancer during the same shift.  Once Plaintiff Nixon was reclassified as an independent contractor, Defendants refused to compensate her whatsoever for any hours worked during the time she worked as an Exotic Dancer or the times she returned to work as a Cocktail Waitress or Drink Serving Dancer after having worked as an Exotic Dancer in the same shift.  When classified as an independent contractor, Plaintiff Nixon's only compensation was in the form of tips from club patrons.  Moreover, for both her time classified as an employee and as an independent contractor, Plaintiff Nixon was required to divide her tips with Defendants and other employees who do not customarily and regularly receive tips.  Therefore, Defendants have failed to compensate Plaintiff Nixon at the federally-mandated minimum wage rate.

3.     Upon learning that Plaintiffs and others were planning to file this lawsuit, Defendants threatened to terminate Plaintiff Coll's and others' jobs and pursue litigation against them unless they agreed to sign arbitration and class/collective action waivers.

4.     Defendants' conduct violates the Fair Labor Standards Act ("FLSA"), which requires non-exempt employees to be compensated for their work at at-least the applicable minimum wage.  *See* 29 U.S.C. § 206(a).

5.     Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay.  *See* 29 U.S.C. § 207(a).

6.     Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision.  *See* 29 U.S.C. § 206.

7.     Plaintiff Coll brings this action on behalf of herself and all similarly-situated current and former Exotic Dancers[1] of Defendants who were classified as independent contractors and not compensated minimum wage or overtime whatsoever for any hours worked for Defendants.

8.     Plaintiff Nixon brings this action on behalf of herself and all similarly-situated current and former Drink Serving Dancers[2] of Defendants who were classified as employees when they worked as Cocktail Waitresses but were reclassified as independent contractors for the remainder of their shift when they worked as Exotic Dancers in a given shift–even if they returned to working as Cocktail Servers during the same shift.  Plaintiff Nixon brings this action on behalf of herself and all such similarly-situated current and

---

[1]     For the purposes of this Complaint, "Exotic Dancers" is exclusively a title used for the purpose of classifying the putative class of similarly situated individuals in this collective action lawsuit and is not necessarily the job title given to the Plaintiff and putative class by Defendants in their work for Defendants.

[2]     For the purposes of this Complaint, "Drink Serving Dancers" is exclusively a title used for the purpose of classifying the putative class of similarly situated individuals in this collective action lawsuit and is not necessarily the job title given to the Plaintiff and putative class by Defendants in their work for Defendants.

former Drink Serving Dancers who were compensated the applicable minimum wage and overtime rates whatsoever for certain hours worked for Defendants.

9.      Plaintiff Coll brings this action on behalf of herself and all similarly-situated current and former Retaliation Victims[3] whose jobs were threatened and/or were required and/or pressured to sign an arbitration and class/collective action waiver.

10.      Plaintiff Coll, individually, and on behalf of all other similarly-situated Exotic Dancers, brings a collective action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").  Members of the Exotic Dancer Collective Action are referred to as "FLSA Exotic Dancers."

11.      Plaintiff Nixon, individually, and on behalf of all other similarly-situated Drink Serving Dancers, brings a collective action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").  Members of the Cocktail Waitress Dancer Collective Action are referred to as "FLSA Drink Serving Dancers."

12.      Plaintiff Coll, individually, and on behalf of all other similarly-situated Retaliation Victims, brings a collective action against Defendants for their unlawful retaliation against Plaintiff Coll and the Retaliation Victims for engaging in FLSA-protected activity, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the

---

[3]      For the purposes of this Complaint, "Retaliation Victims" is exclusively a title used for the purpose of classifying the putative class of similarly situated individuals in this collective action lawsuit and is not necessarily the job title given to the Plaintiff and putative class by Defendants in their work for Defendants.

"FLSA").  Members of the Retaliation Victims Collective Action are referred to as "FLSA

Retaliation Victims."

13.     Additionally, Defendants' failure to compensate Plaintiff Coll and all other

non-exempt Exotic Dancers at a rate equal to or in excess of Arizona's required minimum

wage violates the Arizona Wage Act ("AWA"), Arizona Revised Statutes ("ARS") § 23-

350, et seq., and the Arizona Minimum Wage Act ("AMWA"), ARS § 23-363, et seq.

Plaintiff Coll, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure to recover unpaid wages and other damages owed under the Arizona wage

laws.  Members of the Rule 23 Exotic Dancer Class Action are referred to as the "Arizona

Exotic Dancers."  The Arizona Exotic Dancers are all current and former individuals who

were employed by Defendants as Exotic Dancers at any time starting three years before

this Complaint was filed, up to the present.

14.     Additionally, Defendants' failure to compensate Plaintiff Nixon and all other

non-exempt Drink Serving Dancers at a rate equal to or in excess of Arizona's required

minimum wage violates the Arizona Wage Act ("AWA"), Arizona Revised Statutes

("ARS") § 23-350, et seq., and the Arizona Minimum Wage Act ("AMWA"), ARS § 23-

363, et seq.  Plaintiff Nixon, therefore, brings a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under

the Arizona wage laws.  Members of the Rule 23 Cocktail Waitress Dancer Class Action

are referred to as the "Arizona Drink Serving Dancers."  The Arizona Drink Serving

Dancers are all current and former individuals who were employed by Defendants as Drink

Serving Dancers at any time starting three years before this Complaint was filed, up to the present.

15.     Additionally, Defendants unlawful action against Plaintiff Coll and the Retaliation Victims for engaging in conduct protected by ARS § 23-364 constitutes retaliation under the AMWA, ARS § 23-364.  Plaintiff Coll, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover damages owed under Arizona wage laws.  Members of the Rule 23 Retaliation Victims Class Action are referred to as the "Arizona Retaliation Victims."  The Arizona Retaliation Victims are individuals who are all current and former individuals who worked for Defendants and whose jobs were threatened and/or were required and/or pressured to sign an arbitration and class/collective action waiver.

16.     The FLSA Exotic Dancers, the Arizona Exotic Dancers, the FLSA Drink Serving Dancers, the Arizona Drink Serving Dancers, the FLSA Retaliation Victims, and the Arizona Retaliation Victims are hereinafter collectively referred to as "the Putative Collective and Class Members."

17.     This is a multi-class action for unpaid minimum, overtime wages, retaliation damages, liquidated damages, treble damages, interest, attorneys' fees, and costs under the FLSA, AWA, and AMWA.

## JURISDICTION AND VENUE

18.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this action arises under the Constitution and laws of the United States.

20.     The Court also has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367 because such claims do not raise novel or complex issues of state law and because those claims derive from a common nucleus of operative facts from which the FLSA claims stated herein derive.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial portion of the events forming the basis of this suit occurred in this District, and Defendants operate an adult entertainment club that is located in this District.

## PARTIES

22.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

23.     At all times material to the matters alleged in this Complaint, Plaintiff Coll was an individual residing in Pima County, Arizona, and is a former employee of Defendants.  Her consent to join this action as a Named Plaintiff is attached hereto as "**Exhibit A**."

24.     At all times material to the matters alleged in this Complaint, Plaintiff Nixon was an individual residing in Pima County, Arizona, and is a former employee of Defendants.  Her consent to join this action as a Named Plaintiff is attached hereto as "**Exhibit B**."

25. The FLSA Exotic Dancers and Arizona Exotic Dancers are all current and former Exotic Dancers who worked in Arizona at Defendants' adult entertainment club, Curves, at any time starting three (3) years before this Complaint was filed, up to the present.

26. The FLSA Drink Serving Dancers and Arizona Drink Serving Dancers are all current and former Exotic Dancers who also worked as Cocktail Waitresses in Arizona at Defendants' adult entertainment club, Curves, at any time starting three (3) years before this Complaint was filed, up to the present.

27. The FLSA Retaliation Victims and Arizona Retaliation Victims are individuals who are all current and former individuals who worked for Defendants and whose jobs were threatened and/or were required and/or pressured to sign an arbitration and class/collective action waiver.

28. At all material times, the Putative Collective and Class Members were non-exempt employees of Defendants who worked for Defendants at anytime in the last three years up to the present.

29. At all material times, the Putative Collective and Class Members were employees of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1) and were non-exempt employees under 29 U.S.C. § 213(a)(1).

30. Defendant Dream Street Inc. is an Arizona corporation, authorized to do business in the State of Arizona and was at all relevant times the Putative Collective and Class Members' Employer as defined by 29 U.S.C. § 203(d).

31.     At all relevant times, Defendants owned and operated as Curves Cabaret, an adult entertainment and exotic dancer venue in Tucson, Pima County, Arizona.

32.     At all relevant times throughout the Putative Collective and Class Members' employment, Dream Street Inc. had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with the Putative Collective and Class Members' employment with Dream Street Inc.

33.     Defendants William V. Zanzucchi and Jane Doe Zanzucchi have caused events to take place giving rise to the claims in this Complaint.  William V. Zanzucchi and Jane Doe Zanzucchi are owners of Dream Street, Inc. and were at all relevant times the Putative Collective and Class Members' employer as defined by the FLSA, 29 U.S.C. § 203(d).

34.     Under the FLSA, Defendants William V. Zanzucchi and Jane Doe Zanzucchi are employers.   The FLSA defines "employer" as any individual who acts directly or indirectly in the interest of an employer in relation to an employee.  William V. Zanzucchi and Jane Doe Zanzucchi are owners of Dream Street, Inc.

35.     At all relevant times throughout the Putative Collective and Class Members' employment, William V. Zanzucchi and Jane Doe Zanzucchi had the authority to hire and fire employees, supervised and controlled the Putative Collective and Class Members' work schedules or the conditions of their employment, determined the rate and method of the Putative Collective and Class Members' payment, and maintained employment records

in connection with the Putative Collective and Class Members' employment with Dream Street, Inc.

36.     As persons who acted in the interest Dream Street, Inc. in relation to the company's employees, William V. Zanzucchi and Jane Doe Zanzucchi are subject to individual liability under the FLSA.

37.     Defendants Timothy E. Zanzucchi and Jane Doe Zanzucchi II have caused events to take place giving rise to the claims in this Complaint.  Timothy E. Zanzucchi and Jane Doe Zanzucchi II are owners of Dream Street, Inc. and were at all relevant times the Putative Collective and Class Members' employer as defined by the FLSA, 29 U.S.C. § 203(d).

38.     Under the FLSA, Defendants Timothy E. Zanzucchi and Jane Doe Zanzucchi II are employers.  The FLSA defines "employer" as any individual who acts directly or indirectly in the interest of an employer in relation to an employee.  Timothy E. Zanzucchi and Jane Doe Zanzucchi II are owners of Dream Street, Inc.

39.     At all relevant times throughout the Putative Collective and Class Members' employment, Timothy E. Zanzucchi and Jane Doe Zanzucchi II had the authority to hire and fire employees, supervised and controlled the Putative Collective and Class Members' work schedules or the conditions of their employment, determined the rate and method of the Putative Collective and Class Members' payment, and maintained employment records in connection with the Putative Collective and Class Members' employment with Dream Street, Inc.

40. As persons who acted in the interest Dream Street, Inc. in relation to the company's employees, Timothy E. Zanzucchi and Jane Doe Zanzucchi II are subject to individual liability under the FLSA.

41. Defendants Michael Pavon and Jane Doe Pavon II have caused events to take place giving rise to the claims in this Complaint. Michael Pavon and Jane Doe Pavon are owners of Dream Street, Inc. and were at all relevant times the Putative Collective and Class Members' employer as defined by the FLSA, 29 U.S.C. § 203(d).

42. At all relevant times, all Defendants were the Putative Collective and Class Members' employer as defined by the AWA and AMWA.

43. Under the FLSA, Defendants Michael Pavon and Jane Doe Pavon are employers. The FLSA defines "employer" as any individual who acts directly or indirectly in the interest of an employer in relation to an employee. Michael Pavon and Jane Doe Pavon are owners of Dream Street, Inc.

44. At all relevant times throughout the Putative Collective and Class Members' employment, Michael Pavon and Jane Doe Pavon II had the authority to hire and fire employees, supervised and controlled the Putative Collective and Class Members' work schedules or the conditions of their employment, determined the rate and method of the Putative Collective and Class Members' payment, and maintained employment records in connection with the Putative Collective and Class Members' employment with Dream Street, Inc.

45.     As persons who acted in the interest Dream Street, Inc. in relation to the company's employees, Michael Pavon and Jane Doe Pavon are subject to individual liability under the FLSA.

46.     Plaintiffs are further informed, believes, and therefore alleges that each of the Defendants gave consent to, ratified, and authorized the acts of all other Defendants, as alleged in this Complaint.

47.     At all relevant times, Defendants conducted business in Pima County, Arizona.

48.     Defendants, and each of them, are sued in both their individual and corporate capacities.

49.     All Defendants are jointly and severally liable for the injuries and damages sustained by the Putative Collective and Class Members.

50.     At all relevant times, the Putative Collective and Class Members were "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

51.     The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants.

52.     At all relevant times, Defendants were and continue to be "employers" as defined by FLSA, 29 U.S.C. § 201, *et seq.*

53.     At all relevant times, William V. Zanzucchi and Jane Doe Zanzucchi, Timothy E. Zanzuchi and Jane Doe Zanzucchi II, and Michael Pavon and Jane Doe Pavon were and continue to be "employers" as defined by the AWA and AMWA.  As such, pursuant to ARS § 23-350(3) and ARS § 23-362(B), Defendants acted directly or indirectly

in the interest of the Putative Collective and Class Members' employment as their employer, which makes them individually liable under Arizona State Law.

54.     Defendants individually and/or through an enterprise or agent, directed and exercised control over the Putative Collective and Class Members' work and wages at all relevant times.

55.     At all relevant times, the Putative Collective and Class Members, in their work for Defendants, were engaged in commerce or the production of goods for commerce.

56.     At all relevant times, the Putative Collective and Class Members, in their work for Defendants, were employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

57.     At all relevant times, all Defendants were joint employers of the Putative Collective and Class Members.  At all relevant times: (1) Defendants were not completely disassociated with respect to the employment of the Putative Collective and Class Members; and (2) Defendants were under common control.  In any event, at all relevant times, Defendants were joint employers under the FLSA and 29 C.F.R. § 791.2(b) and employed the Putative Collective and Class Members.

**FACTUAL ALLEGATIONS**

58.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

59.     Defendants own and/or operate as Curves Cabaret, an adult entertainment club located in Pima County, Arizona.

60.     Defendants employ Exotic Dancers and Drink Serving Dancers at their aforementioned locations.

61.     "Exotic Dancers" refers to individuals who worked for Defendants as exotic dancers, were treated as independent contractors by Defendants, and whose compensation was through tips from Defendants' customers.

62.     "Drink Serving Dancers" refers to individuals who worked for Defendants as cocktail waitresses, were classified as employees when they worked as Cocktail Waitresses but were reclassified as independent contractors for the remainder of their shift when they worked as Exotic Dancers in a given shift–even if they returned to working as Cocktail Servers during the same shift.

63.     Plaintiff Coll worked on a regular basis as an Exotic Dancer for Defendants' adult entertainment club located in Tucson, Arizona.

64.     Plaintiff Coll was compensated exclusively through tips from Defendants' customers.  That is, Defendants did not pay Plaintiff Selena Coll whatsoever for any hours worked at their establishment.

65.     Plaintiff Nixon worked on a regular basis as a Cocktail Waitress Dancer for Defendants' adult entertainment club located in Tucson, Arizona.

66.     Plaintiff Nixon, in her work for Defendants, was classified as both an employee and independent contractor, depending on whether she performed work as a cocktail waitress or exotic dancer, respectively.  However, the work she performed was a "hybrid" waitress/dancer position.  She generally began her shifts working as a cocktail waitress and classified as an employee and received a tip-credit hourly wage for that time.

However, as soon as she performed any work whatsoever as an exotic dancer (e.g., performed her first dance), Plaintiff Nixon was immediately reclassified as an independent contractor and received no wage whatsoever for the rest of that shift, even if she returned to performing work as a cocktail waitress. As such, upon being reclassified as an independent contractor, Defendants did not pay Plaintiff Nixon any wage whatsoever for any hours worked and was compensated exclusively through tips from Defendants' customers during that shift.

67. Furthermore, Defendants charged Plaintiffs Coll and Nixon a "house fee" per shift worked. Defendants also required Plaintiffs Coll and Nixon to share their tips with other non-service employees who do not customarily receive tips, including the employers, managers, disc jockeys, bouncers, and the house.

68. Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs Coll and Nixon about the tip credit allowance (including the amount to be credited) before the tip credit was utilized. That is, Defendants' Exotic Dancers and Drink Serving Dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs Coll and Nixon to retain all of their tips and instead required that they divide their tips amongst other employers and employees who do not customarily and regularly receive tips. Because Defendant violated the FLSA's tip-

pool and notice requirements, Defendants lose the right to take a tip credit toward minimum wage.

69.     Furthermore, Defendants are in violation of Arizona's tipped employee compensation provision, ARS ¶ 23-363(C), which provides that "the employer may pay a wage up to $3.00 per hour less than the minimum if the employer can establish…that for each week, when adding tips received to wages paid, the employee received not less than the minimum wage for all hours worked."  Defendants failed to compensate Plaintiffs Coll and Nixon with wages for hours worked in violation of the Arizona Minimum Wage Act.

70.     Defendants illegally classified the Exotic Dancers and Drink Serving Dancers as independent contractors.  However, at all times, the Putative Collective and Class Members were employees of Defendants.

71.     In addition, Defendants instructed the Exotic Dancers and Drink Serving Dancers about when, where, and how they were to perform their work.

72.     The following further demonstrates the Exotic Dancers' and Drink Serving Dancers' status as employees:

> a.     Defendants have the sole right to hire and fire the Exotic Dancers and Drink Serving Dancers;
>
> b.     Defendants required dancers to complete an employee application as a prerequisite to their employment;
>
> c.     Defendants made the decision not to pay overtime;
>
> d.     Defendants provide the Exotic Dancers and Drink Serving Dancers with music equipment and a performing stage;

e.    Defendants supervise the Exotic Dancers and Drink Serving Dancers;

f.    The Exotic Dancers and Drink Serving Dancers have made no financial investment with Defendants' business;

g.    Defendants schedule Exotic Dancers and Drink Serving Dancers and as such have sole control over their opportunity for profit;

h.    Defendants suspended Exotic Dancers and Drink Serving Dancers for violations of their rules of conduct;

i.    Defendants set the prices for house fees, dances, and tip outs; and

j.    The Exotic Dancers and Drink Serving Dancers were hired as permanent employees and many have worked for Defendants for years.

73.    Defendants misclassified Plaintiffs Coll and Nixon and the Exotic Dancers and Drink Serving Dancers as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA and the AMWA.

74.    Plaintiffs Coll and Nixon are not exempt from the overtime and minimum wage requirements of the FLSA and AMWA.

75.    Although Plaintiffs Coll and Nixon and the Putative Collective and Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.  In fact, they receive no compensation whatsoever from Defendants for time worked while classified as independent contractors.  Thus,

Defendants violated the minimum wage and overtime requirements of the FLSA.  *See* 29 U.S.C. §§ 206, 207.

76.     Defendants' method of pay towards Plaintiffs Selena Coll and Ariel Nixon and the Putative Collective and Class Members were willful and were not based on a good faith and reasonable belief that its conduct complied with the FLSA.   Defendants misclassified Plaintiffs Coll and Nixon and the Putative Collective and Class Members with the sole intent to avoid paying them in accordance with the FLSA.

77.     Defendants method of pay towards Plaintiffs Selena Coll and Ariel Nixon and the Putative Collective and Class Members were willful and not based on a good faith and reasonable belief that their conduct complied with Arizona law.

78.     In August 2018, upon information and belief, Defendants learned that Plaintiff Nixon, Coll, and certain other current and former Exotic Dancers and Drink Serving Dancers of Defendants endeavored to pursue unpaid wages related to allegations contained in this complaint.

79.     Such conduct by Plaintiff Nixon, Coll, and certain other current and former Exotic Dancers and Drink Serving Dancers of Defendants was protected activity under the FLSA.

80.     Subsequently, Defendants took concerted action against Plaintiff Coll and other current and former Exotic Dancers and Drink Serving Dancers of Defendants.  Such action included threatening Plaintiff Coll and other current and former Exotic Dancers and Drink Serving Dancers of Defendants with the termination of their employment and

litigation against them for alleged breach of contract in the event they pursued litigation against Defendants for unpaid wages under the FLSA.

81.     In addition, upon learning that Plaintiff Nixon, Coll, and certain other current and former Exotic Dancers and Drink Serving Dancers of Defendants endeavored to pursue unpaid wages related to allegations contained in this complaint, Defendants required Plaintiff Coll and certain other current and former Exotic Dancers and Drink Serving Dancers to sign arbitration and class/collective action waivers.  Those who did not sign such agreements were immediately terminated for their employment with Defendants.

82.     In addition, Defendants posted publicly in their adult entertainment club the names and information of all former Exotic Dancers and Drink Serving Dancers of Defendants who were fired as a result of their refusal to sign the arbitration and class/collective action waivers in order to deter additional individuals from pursuing unpaid wages related to allegations contained in this complaint.

83.     In addition, Defendants posted a public notice in their adult entertainment establishment stating that Plaintiffs in this lawsuit violated the terms of their alleged contract, disparaging Plaintiffs,  threatening litigation against any other individual joining this lawsuit.

84.     In addition, Defendants sent letters and emails to current and former Exotic Dancers and Drink Serving Dancers of Defendants demanding they cease and desist from allegedly breaching a contractual agreement between them and Defendants.

85.     By engaging in such conduct, Defendants took adverse employment action against Plaintiff Coll, and other current and former Exotic Dancers and Drink Serving Dancers of Defendants.

86.     Plaintiff Coll, and other current and former Exotic Dancers and Drink Serving Dancers of Defendants suffered such adverse employment action by Defendants as a direct and consequential result of their having engaged in FLSA-protected activity.

87.     Plaintiff Coll's and certain other current and former Exotic Dancers' and Drink Serving Dancers' of Defendants pursuit of unpaid wages related to allegations contained in this complaint constituted protected activity under ARS § 23-364 as an exercise of rights guaranteed under Article 8 of Title 23 of the Arizona Revised Statutes.

88.     Defendants' conduct in response to Plaintiff Coll and certain other current and former Exotic Dancers' and Drink Serving Dancers' of Defendants constituted the denial of rights guaranteed under Article 8 of Title 23 of the Arizona Revised Statutes, as well as threats, discharges, suspensions, demotions, reductions of hours, and other adverse actions against Plaintiff Coll and certain other current and former Exotic Dancers' and Drink Serving Dancers' of Defendants for the exercise of rights guaranteed therein.

89.     Plaintiff Coll, and other current and former Exotic Dancers and Drink Serving Dancers of Defendants suffered such adverse employment action by Defendants as a direct and consequential result of their having engaged in AMWA-protected activity.

## EQUITABLE TOLLING

90.     The doctrine of equitable tolling preserves a plaintiff's full claim when a strict application of the statute of limitations would be inequitable.  *See Partlow v. Jewish*

-21-

*Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760-61 (9th Cir. 1981), *abrogated on other*

*grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).

91.     Equitable tolling is proper when an employer has engaged in misleading

conduct.  Defendants intentionally misled Plaintiffs Coll and Nixon and the Putative

Collective and Class Members into believing that they were not required to pay her

minimum wage and/or overtime for hours worked in excess of forty (40) hours per

workweek.  Defendants coerced Plaintiffs Coll and Nixon and the Putative Collective and

Class Members into believing that they were independent contractors.  Consequently,

Plaintiffs Coll and Nixon and the Putative Collective and Class Members were victims of

fraud and unable to ascertain any violation taking place.

92.     Thus, the statute of limitations for Plaintiffs Coll and Nixon and the Putative

Collective and Class Members should be equitably tolled due to Defendants' fraudulent

concealment of Plaintiffs Coll and Nixon and the Putative Collective and Class Members

rights.  Plaintiffs Coll and Nixon therefore seek to have the limitations period extended

from the first date that Defendants used this covert payroll practice up to the time each

Plaintiff joins this lawsuit.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY MINIMUM WAGE
### (COLLECTIVE ACTION)

93.     Plaintiffs Coll and Nixon incorporate by reference all allegations in all

preceding paragraphs.

94.     Defendants' practice of failing to pay Plaintiffs Coll and Nixon and the Putative Collective and Class Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206.

95.     None of the exemptions provided by the FLSA regulating the duty of employers to pay all employees for all hours worked at the required minimum wage rate are applicable to the Defendants or Plaintiffs Coll, Nixon, or the Putative Collective and Class Members.

COUNT II
VIOLATION OF THE FAIR LABOR STANDARDS ACT
FAILURE TO PAY OVERTIME
(COLLECTIVE ACTION)

96.     Plaintiffs Coll and Nixon incorporate by reference all allegations in all preceding paragraphs.

97.     Defendants' practice of failing to pay Plaintiffs Coll and Nixon and the Putative Collective and Class Members time-and-a-half rate for hours worked in excess of forty (40) per workweek violates the FLSA, 29 U.S.C. § 207.

98.     None of the exemptions provided by the FLSA regulating the duty of employers to pay all employees for all hours worked at the required minimum wage rate are applicable to the Defendants or Plaintiffs Coll, Nixon, or the Putative Collective and Class Members.

COUNT III
VIOLATION OF THE FAIR LABOR STANDARDS ACT
FAILURE TO KEEP ADEQUATE RECORDS
(COLLECTIVE ACTION)

99.     Plaintiffs Coll and Nixon incorporate by reference all allegations in all preceding paragraphs.

100.    Defendants failed to keep adequate records of Plaintiffs' Coll and Nixon and the Putative Collective and Class Members' work hours and pay in violation of section 211(c) of the FLSA.  *See* 29 U.S.C. § 211(c).

101.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a.    The time of day and day of week on which the employees' work week begins;

    b.    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

    c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

    e.    The hours worked each workday and total hours worked each workweek;

    f.    The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

    g.    The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

    h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

    i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.      The total wages paid each pay period; and

k.      The date of payment and the pay period covered by payment.

29 C.F.R. § 516.2, 516.5.

102.    Defendants have not complied with federal law and have failed to maintain such records with respect to the Plaintiffs Coll and Nixon and the Putative Collective and Class Members.  Because Defendants' records are inaccurate and/or inadequate, Plaintiffs Coll and Nixon and the Putative Collective and Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work performed "as a matter of just and reasonable inference."  *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Plaintiffs Coll and Nixon and the Putative Collective and Class Members do not seek affirmative relief because of Defendants' violations of the FLSA's record keeping requirements.  Instead, Plaintiffs Coll and Nixon seek to put Defendants on notice that they intend to rely on *Mr. Clemens Pottery Co.* to prove the extent of their unpaid work.

COUNT IV
VIOLATION OF THE FAIR LABOR STANDARDS ACT
RETALIATION
(COLLECTIVE ACTION)

103.    Plaintiffs Coll and Nixon incorporate by reference all allegations in all preceding paragraphs.

104.    Plaintiff Coll and the FLSA Retaliation Victims engaged in conduct protected by the FLSA in pursuing unpaid wages as alleged in this complaint.

-25-

105.  Plaintiff Coll and the FLSA Retaliation Victims suffered adverse employment action under the FLSA when Defendants took concerted action against Plaintiff Coll and the FLSA Retaliation Victims including but not limited to terminating their employment, disciplining them, and threatening them with litigation.

106.  Plaintiff Coll and the FLSA Retaliation Victims suffered such adverse employment action by Defendants as a direct and consequential result of their having engaged in FLSA-protected activity.

COUNT V
VIOLATION OF THE ARIZONA MINIMUM WAGE ACT
FAILURE TO PAY MINIMUM WAGE
(CLASS ACTION)

107.  Plaintiffs Coll and Nixon incorporate by reference all allegations in all preceding paragraphs.

108.  Defendants' practice of willfully failing to pay Plaintiffs Coll and Nixon and the Putative Collective and Class Members wages at the rate of the Arizona Minimum Wage violates the AMWA, ARS § 23-363.

COUNT VI
VIOLATION OF THE ARIZONA MINIMUM WAGE ACT
RETALIATION
(CLASS ACTION)

109.  Plaintiffs Coll and Nixon incorporate by reference all allegations in all preceding paragraphs.

110.  Plaintiff Coll and the Arizona Retaliation Victims engaged in conduct protected by the AMWA in pursuing unpaid wages as alleged in this complaint.

111.   Plaintiff Coll and the Arizona Retaliation Victims suffered adverse employment action under the AMWA when Defendants took concerted action against Plaintiff Coll and the Arizona Retaliation Victims including but not limited to terminating their employment, disciplining them, and threatening them with litigation.

112.   Plaintiff Coll and the Arizona Retaliation Victims suffered such adverse employment action by Defendants as a direct and consequential result of their having engaged in AMWA-protected activity.

## COLLECTIVE ACTION ALLEGATIONS

### A.   FLSA Exotic Dancers

113.   Plaintiffs Coll and Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

114.   Plaintiff Coll brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and on behalf of all individuals who were employed by Defendants as Exotic Dancers at any time during the three (3) years prior to the commencement of this action to the present.

115.   Plaintiff Coll has actual knowledge that the FLSA Exotic Dancers have been denied pay at the federally mandated minimum wage rate and have also been denied overtime pay for hours worked over forty (40) hours per workweek.  As such, she has first-hand knowledge of the same pay violations at Defendants' adult entertainment club. Furthermore, other Exotic Dancers at Defendants' adult entertainment club have shared with her similar pay violation experiences as those described in this complaint.

116.   Other employees similarly situated to Plaintiff Coll work or have worked for Defendants' adult entertainment club business, but were not paid a minimum wage at the federally mandated minimum wage rate or overtime at the rate of one and one-half their regular rate of pay when those hours exceeded forty (40) hours per workweek.

117.   Although Defendants permitted and/or required the FLSA Exotic Dancers to work in excess of forty (40) hours per workweek, Defendants have denied them full minimum wage compensation for the hours they worked and full overtime compensation for their hours worked in excess of forty (40).

118.   The FLSA Exotic Dancers perform or have performed the same or similar work as Plaintiff Coll.

119.   The FLSA Exotic Dancers are not exempt from receiving minimum wage and/or overtime pay at the federally mandated minimum wage and overtime rates under the FLSA.

120.   As such, the FLSA Exotic Dancers are similar to Plaintiff Coll in terms of job duties, pay structure, misclassification as independent contractors, and/or the denial of minimum wage and overtime.

121.   Defendants' failure to pay minimum wage and overtime rates required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Exotic Dancers.

122.   The experiences of Plaintiff Coll, with respect to her pay, are typical of the experiences of the FLSA Exotic Dancers.

123.   The specific job titles or precise job responsibilities of each FLSA Exotic Dancer does not prevent collective treatment.

124.   All FLSA Exotic Dancers, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

125.   All FLSA Exotic Dancers, irrespective of their particular job requirements, are entitled to overtime compensation for hours in excess of forty (40) during a given workweek.

126.   Although the exact amount of damages may vary among the FLSA Exotic Dancers, the damages for the FLSA Exotic Dancers can be easily calculated by simple formulas.  The claims of all FLSA Exotic Dancers arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all of the FLSA Exotic Dancers.

127.   As such, Plaintiff Coll brings her FLSA minimum wage and overtime claims as a collective action on behalf of the following class:

> **The FLSA Exotic Dancers are all of Defendants' current and former individuals who worked as Exotic Dancers at Defendants' Curves Cabaret located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

**B.     FLSA Drink Serving Dancers**

128.   Plaintiffs Selena Coll and Ariel Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

129.    Plaintiff Nixon brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and on behalf of all individuals who were employed by Defendants as Drink Serving Dancers at any time during the three (3) years prior to the commencement of this action to the present.

130.    Plaintiff Nixon has actual knowledge that the FLSA Drink Serving Dancers have been denied pay at the federally mandated minimum wage rate and have also been denied overtime pay for hours worked over forty (40) hours per workweek.  As such, she has first-hand knowledge of the same pay violations at Defendants' adult entertainment club.  Furthermore, other Drink Serving Dancers at Defendants' adult entertainment club have shared with her similar pay violation experiences as those described in this complaint.

131.    Other employees similarly situated to Plaintiff Nixon work or have worked for Defendants' adult entertainment club business, but were not paid a minimum wage at the federally mandated minimum wage rate or overtime at the rate of one and one-half their regular rate of pay when those hours exceeded forty (40) hours per workweek.

132.    Although Defendants permitted and/or required the FLSA Drink Serving Dancers to work in excess of forty (40) hours per workweek, Defendants have denied them full minimum wage compensation for the hours they worked and full overtime compensation for their hours worked in excess of forty (40).

133.    The FLSA Drink Serving Dancers perform or have performed the same or similar work as Plaintiff Nixon.

134.    The FLSA Drink Serving Dancers are not exempt from receiving minimum wage at the federally mandated minimum wage and overtime rates under the FLSA.

135.   As such, the FLSA Drink Serving Dancers are similar to Plaintiff Nixon in terms of job duties, pay structure, misclassification as independent contractors, and/or the denial of minimum wage and overtime.

136.   Defendants' failure to pay minimum wage and overtime rates required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Drink Serving Dancers.

137.   The experiences of Plaintiff Ariel Nixon, with respect to her pay, are typical of the experiences of the FLSA Drink Serving Dancers.

138.   The specific job titles or precise job responsibilities of each FLSA Cocktail Waitress Dancer does not prevent collective treatment.

139.   All FLSA Drink Serving Dancers, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

140.   All FLSA Drink Serving Dancers, irrespective of their particular job requirements, are entitled to overtime compensation for hours in excess of forty (40) during a given workweek.

141.   Although the exact amount of damages may vary among the FLSA Drink Serving Dancers, the damages for the FLSA Drink Serving Dancers can be easily calculated by simple formulas.  The claims of all FLSA Drink Serving Dancers arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all of the FLSA Drink Serving Dancers.

142.    As such, Plaintiff Ariel Nixon brings her FLSA minimum wage and overtime claims as a collective action on behalf of the following class:

**The FLSA Drink Serving Dancers are all of Defendants' current and former individuals who worked as a hybrid position as Exotic Dancers classified as independent contactors and Cocktail Waitresses classified as employees until they performed duties as Exotic Dancers at Defendants' Curves Cabaret located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

**C.    FLSA Retaliation Victims**

143.    Plaintiffs Selena Coll and Ariel Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

144.    Plaintiff Coll brings this action pursuant to 29 U.S.C. § 216(b) on her own behalf and on behalf of all individuals who were employed by Defendants as Exotic Dancers or Drink Serving Dancers who were at any time subjected by Defendants to the workplace postings, the cease and desist letters or emails, or other similar threats as discussed previously(the "FLSA Retaliation Victims").

145.    Plaintiff Coll has actual knowledge that the FLSA Retaliation Victims have been subject to adverse employment action by Defendants as a direct and consequential result of their having engaged in FLSA-protected conduct; namely, having taken action related to pursing unpaid wages in a manner related to allegations contained in this complaint.

146.    Other employees similarly situated to Plaintiff Coll have been subject to adverse employment action by Defendants as a direct and consequential result of their

-32-

having engaged in FLSA-protected conduct; namely, having taken action related to pursing unpaid wages in a manner related to allegations contained in this complaint.

147.    The FLSA Retaliation Victims perform or have performed the same or similar work as Plaintiff Coll.

148.    As such, the FLSA Retaliation Victims are similar to Plaintiff Coll in terms of job duties, pay structure, and having been subject to adverse employment action as a direct and consequential result of having taken action related to pursing unpaid wages in a manner related to allegations contained in this complaint.

149.    Defendants' retaliation against the FLSA Retaliation Victims results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Retaliation Victims.

150.    The experiences of Plaintiff Coll, with respect to her retaliation experience with Defendants, are typical of the experiences of the FLSA Retaliation Victims.

151.    The specific job titles or precise job responsibilities of each FLSA Retaliation Victim does not prevent collective treatment.

152.    All FLSA Retaliation Victims, irrespective of their particular job requirements, are entitled to compensation for having been subjected to Defendants' having engaged in adverse employment action as a direct and consequential result of Plaintiff Coll's and the FLSA Retaliation Victims' having taken action related to pursing unpaid wages in a manner related to allegations contained in this complaint.

153.    Although the exact amount of damages may vary among the FLSA Retaliation Victims, the damages for the FLSA Retaliation Victims can be easily calculated

by simple formulas.  The claims of all FLSA Retaliation Victims arise from a common nucleus of facts.  Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all of the FLSA Retaliation Victims.

154.   As such, Plaintiff Coll brings her FLSA Retaliation claims as a collective action on behalf of the following class:

> **The FLSA Retaliation Victims are all of Defendants' current and former individuals who worked as Exotic Dancers and/or Drink Serving Dancers who were at any time subjected by Defendants to the Workplace Posting, the Cease and Desist Letters or Emails, or other similar threats.**

### D.   Arizona Exotic Dancers

155.   Plaintiffs Coll and Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

156.   Plaintiff Coll brings her Arizona wage claims as a Rule 23 class action on behalf of the following class:

> **The Arizona Exotic Dancers are all of Defendants' current and former individuals who worked as Exotic Dancers at Defendants' Curves Cabaret located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

157.   <u>Numerosity</u>.  The number of members in the Arizona Exotic Dancers is believed to be over one hundred (100).  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Exotic Dancers as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Exotic Dancers will be determined from Defendants' records, as will the compensation paid to each of

them.  As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Arizona Exotic Dancers and Defendants.

158.   Typicality.  Plaintiff Coll's claims are typical of the Arizona Exotic Dancers because like the members of the Arizona Exotic Dancers, Plaintiff Coll was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Arizona Exotic Dancers.  Defendants failed to pay non-exempt employees who worked at Curves Cabaret minimum wages for hours worked.  Defendants also failed to pay non-exempt employees who worked at Curves Cabaret overtime wages for all of their overtime hours worked.  Plaintiff Coll and the Arizona Exotic Dancers have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

159.   Adequacy.   Plaintiff Coll is a representative party who will fairly and adequately protect the interests of the Arizona Exotic Dancers because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.   Plaintiff Coll has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff Coll does not have any interest that may be contrary to or in conflict with the claims of the Arizona Exotic Dancers she seeks to represent.

160.   Commonality.   Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

a.      Whether Defendants failed to pay Plaintiff Coll and the Arizona Exotic Dancers the minimum wage for all hours worked;

b.      Whether Plaintiff Coll and the Arizona Exotic Dancers worked more than forty (40) hours in a given workweek;

c.      Whether Defendants failed to pay Plaintiff Coll and the Arizona Exotic Dancers overtime wages for all hours worked over forty (40) hours in a given workweek;

161.    The common issues of law include, but are not limited to:

a.      Whether Defendants improperly classified Plaintiff Coll and the Arizona Exotic Dancers as exempt;

b.      Whether Plaintiff Coll and the Arizona Exotic Dancers are entitled to compensatory damages;

c.      The proper measure of damages sustained by Plaintiff Coll and the Arizona Exotic Dancers; and

d.      Whether Defendants' actions were "willful."

162.    _Superiority_.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Exotic Dancers could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Arizona Exotic Dancers would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

163.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the

parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Exotic Dancers are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  The identity of members of the Arizona Exotic Dancers is readily identifiable from Defendants' records.

164.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees and meal periods taken.

165.    Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff Coll and the Arizona Exotic Dancers according to applicable Arizona laws.

166.    <u>Nature of notice to be proposed</u>.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.*, "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona Exotic Dancers by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**E.    Arizona Drink Serving Dancers**

167.    Plaintiffs Coll and Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

168.    Plaintiff Nixon brings her Arizona wage claims as a Rule 23 class action on behalf of the following class:

**The Arizona Drink Serving Dancers are all of Defendants' current and former individuals who worked as a hybrid position as Exotic Dancers classified as independent contactors and Cocktail Waitresses classified as employees until they performed duties as Exotic Dancers at Defendants' Curves Cabaret located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

169.    <u>Numerosity</u>.  The number of members in the Arizona Drink Serving Dancers is believed to be over one fifty (50).  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Drink Serving Dancers as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Drink Serving Dancers will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Arizona Drink Serving Dancers and Defendants.

170.    <u>Typicality</u>.  Plaintiff Nixon's claims are typical of the Arizona Drink Serving Dancers because like the members of the Arizona Drink Serving Dancers, Plaintiff Nixon was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Arizona Drink Serving Dancers.  Defendants failed to pay non-exempt employees who worked at Curves Cabaret minimum wages for hours worked. Defendants also failed to pay non-exempt employees who worked at Curves Cabaret overtime wages for all of their overtime hours worked.  Plaintiff Nixon and the Arizona

Drink Serving Dancers have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

171.   <u>Adequacy</u>.   Plaintiff Nixon is a representative party who will fairly and adequately protect the interests of the Arizona Drink Serving Dancers because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.   Plaintiff Nixon has retained attorneys who are competent in both class actions and wage and hour litigation.   Plaintiff Nixon does not have any interest that may be contrary to or in conflict with the claims of the Arizona Drink Serving Dancers she seeks to represent.

172.   <u>Commonality</u>.   Common issues of fact and law predominate over any individual questions in this matter.   The common issues of fact include, but are not limited to:

a.   Whether Defendants failed to pay Plaintiff Nixon and the Arizona Drink Serving Dancers the minimum wage for all hours worked;

b.   Whether Plaintiff Ariel Nixon and the Arizona Drink Serving Dancers worked more than forty (40) hours in a given workweek;

c.   Whether Defendants failed to pay Plaintiff Nixon and the Arizona Drink Serving Dancers overtime wages for all hours worked over forty (40) hours in a given workweek;

173.   The common issues of law include, but are not limited to:

d.   Whether Defendants improperly classified Plaintiff Nixon and the Arizona Drink Serving Dancers as exempt;

e.   Whether Plaintiff Nixon and the Arizona Drink Serving Dancers are entitled to compensatory damages;

f. The proper measure of damages sustained by Plaintiff Nixon and the Arizona Drink Serving Dancers; and

g. Whether Defendants' actions were "willful."

174. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Arizona Drink Serving Dancers could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Arizona Drink Serving Dancers would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

175. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Drink Serving Dancers are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identity of members of the Arizona Drink Serving Dancers is readily identifiable from Defendants' records.

176. This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees and meal periods taken.

177.    Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff Nixon and the Arizona Drink Serving Dancers according to applicable Arizona laws.

178.    <u>Nature of notice to be proposed</u>.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.*, "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona Drink Serving Dancers by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**F.    Arizona Retaliation Victims**

179.    Plaintiffs Coll and Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

180.    Plaintiff Coll brings her Arizona retaliation claims as a Rule 23 class action on behalf of the following class:

> **The Arizona Retaliation Victims are all of Defendants' current and former individuals who worked as Exotic Dancers and Drink Serving Dancers who were at any time subjected by Defendants to the Workplace Posting, the Cease and Desist Letters or Emails, or other similar threats.**

181.    <u>Numerosity</u>.  The number of members in the Arizona Retaliation Victims is believed to be over one hundred (100).  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Retaliation Victims as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Retaliation

Victims will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Arizona Retaliation Victims and Defendants.

182.  <u>Typicality</u>.  Plaintiff Coll's claims are typical of the Arizona Retaliation Victims because like the members of the Arizona Retaliation Victims, Plaintiff Coll was subject to Defendants' having engaged in adverse employment action as a direct and consequential result of Plaintiff Coll's and the FLSA Retaliation Victims' having taken action related to pursing unpaid wages in a manner related to allegations contained in this complaint.

183.  <u>Adequacy</u>.  Plaintiff Coll is a representative party who will fairly and adequately protect the interests of the Arizona Retaliation Victims because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiff Coll has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff Coll does not have any interest that may be contrary to or in conflict with the claims of the Arizona Retaliation Victims she seeks to represent.

184.  <u>Commonality</u>.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

    h.    Whether Defendants caused Plaintiff Coll and the Arizona Retaliation Victims to suffer adverse employment action;

i.   Whether the adverse employment action suffered by Plaintiff Coll and the Arizona Retaliation Victims was a direct and consequential result of their engaging in statutorily protected conduct;

185.   The common issues of law include, but are not limited to:

j.   Whether Defendants improperly retaliated against Plaintiff Coll and the Arizona Retaliation Victims;

k.   Whether Plaintiff Coll and the Arizona Retaliation Victims are entitled to compensatory damages;

l.   Whether Plaintiff Coll and the Arizona Retaliation Victims are entitled to punitive damages;

m.   Whether Plaintiff Coll and the Arizona Retaliation Victims are entitled to emotional distress damages; and

n.   The proper measure of damages sustained by Plaintiff Coll and the Arizona Retaliation Victims;

186.   <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Retaliation Victims could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Arizona Retaliation Victims would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

187.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation

in one forum, judicial economy and parity among the claims of individual Arizona Retaliation Victims are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  The identity of members of the Arizona Retaliation Victims is readily identifiable from Defendants' records.

188.   This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees and meal periods taken.

189.   Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff Coll and the Arizona Retaliation Victims according to applicable Arizona laws.

190.   <u>Nature of notice to be proposed</u>.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.*, "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona Retaliation Victims by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## **DAMAGES**

191.   Plaintiffs Coll and Nixon reallege and incorporate by reference all allegations in all preceding paragraphs.

192.    Plaintiffs Coll and Nixon and the Putative Collective and Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

193.    Plaintiffs Coll and Nixon and the Putative Collective and Class Members are entitled to recover overtime compensation for the hours they worked in excess of 40 per given workweek for which they were not paid at the federally mandated one and one half times their regular rates of pay.

194.    Plaintiffs Coll and Nixon and the Putative Collective and Class Members are also entitled to all of the misappropriated funds, tips, service, and other similar charges.

195.    Plaintiffs Coll and Nixon and the FLSA Exotic Dancers and the FLSA Drink Serving Dancers are also entitled to an amount equal to all of their unpaid wages as liquidated damages.  29 U.S.C. § 216(b).

196.    Plaintiffs Coll and Nixon and the FLSA Exotic Dancers and the FLSA Drink Serving Dancers are also entitled to recover their attorneys' fees and costs as required by the FLSA, 29 U.S.C. § 216(b).

197.    Plaintiffs Coll and Nixon and the Arizona Exotic Dancers and the Arizona Drink Serving Dancers are also entitled to an amount equal to wages owed, interest thereon, and an additional amount equal to twice the underpaid wages.  ARS § 23-364(G).

198.    Plaintiffs Coll and Nixon and the Arizona Exotic Dancers and the Arizona Drink Serving Dancers are also entitled to recover attorneys' fees and costs under ARS § 23-364(G).

199.   Plaintiff Coll and the FLSA Retaliation Victims are also entitled to compensatory damages, front pay, back pay, emotional distress damages, and punitive damages.  29 U.S.C. § 216(b).

200.   Plaintiff Coll and the FLSA Retaliation Victims are also entitled to recover their attorneys' fees and costs as required by the FLSA.  29 U.S.C. § 216(b).

201.   Plaintiff Coll and the Arizona Retaliation Victims are also entitled to compensatory damages, front pay, back pay, emotional distress damages, and punitive damages.  ARS § 23-364(G).

202.   Plaintiff Coll and the Arizona Retaliation Victims are also entitled to recover their attorneys' fees and costs as required by the AMWA.  ARS § 23-364(G).

## PRAYER FOR RELIEF

203.   For these reasons, Plaintiffs Selena Coll and Ariel Nixon and the Putative Collective and Class Members respectfully request that judgment be entered in their favor awarding the following relief:

       a.     All unpaid wages at the FLSA mandated minimum wage rate;

       b.     Overtime compensation for all hours worked in excess of forty in a given workweek at the applicable time-and-a-half rate;

       c.     All misappropriated tips;

       d.     All misappropriated funds and service fees and charges;

       e.     FLSA retaliation damages, including, but not limited to, compensatory damages, front pay, back pay, emotional distress damages, and punitive damages;

f.      AMWA retaliation damages, including, but not limited to, compensatory damages, front pay, back pay, emotional distress damages, and punitive damages;

g.      An equal amount of all owed wages as liquidated damages as allowed under the FLSA;

h.      An amount equal to wages owed, interest thereon, and an additional amount equal to twice the underpaid wages pursuant to ARS § 23-364(G);

i.      Prejudgment and post-judgment interest on unpaid back wages pursuant to the FLSA and/or ARS § 23-364(G);

j.      Tolling of the statute of limitations;

k.      Reasonable attorneys' fees, costs and expenses of this action as provided by the FLSA and ARS § 23-364(G);

l.      In the event Defendants fail to satisfy any judgment for Plaintiff with respect to the Arizona wage claims, an award that Defendants shall pay Plaintiffs an amount which is treble the amount of the outstanding judgment with interest thereon at the then legal rate in accordance with ARS § 23-360; and

m.    Such other and further relief to which Plaintiffs Coll and Nixon and the Putative Collective and Class Members may be entitled, at law or in equity.

///

///

-47-

RESPECTFULLY SUBMITTED this 18th day of September, 2018.

ZOLDAN LAW GROUP PLLC

By: s/ *Jason Barrat*
Michael Zoldan
Jason Barrat
*Attorneys for Plaintiffs*

BENDAU & BENDAU PLLC

By: s/ *(w/ permission) Clifford Bendau*
Clifford P. Bendau, II
Christopher J. Bendau
*Attorneys for Plaintiffs*